UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JERRY AND CINDY STINSON, | ) | |
| | ) | |
| Plaintiffs, | ) | Cause No.:  1:19-cv-04108-TWP-TAB |
| v. | ) | |
| | ) | |
| COLONIAL SAVINGS, F.A. and | ) | |
| EQUIFAX INFORMATION SERVICES, LLC. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNTS III, IV, V, VII, AND XII OF PLAINTIFFS' COMPLAINT - SUBMITTED ON BEHALF OF DEFENDANT, COLONIAL SAVINGS, F.A., PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)

Colonial Savings, F.A., Defendant in this cause, respectfully submits this Memorandum in support of its contemporaneous Motion to Dismiss Counts III, IV, V, VII, and XII of Jerry Stinson's and Cindy Stinson's ("Plaintiffs") October 3, 2019, Complaint and Demand for Jury Trial.  In support thereof, Defendant states and shows:

### INTRODUCTION

Plaintiffs attempt to allege a breach of contract; non-compliance with the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA"); varying violations of the U.S. bankruptcy code and the Rules of Bankruptcy Procedure—including the discharge injunction (11 U.S.C. § 524), the automatic stay (11 U.S.C. § 362), and Bankruptcy Rule 3002.1; that obligations under the Truth In Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA") have been ignored; that Colonial has run afoul of Indiana's Deceptive Consumer Sales Act, Indiana Code § 24-5-0.5, *et seq.* ("IDCSA"); that the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") has been disregarded; and that Colonial committed conversion under Indiana Code § 35-43-4-3(a).

1

As explained in greater detail below, jurisdiction for this Court over Count III (the discharge injunction), Count IV (the automatic stay), and Count V (Bankruptcy Rule 3002.1) is lacking.  Moreover, Plaintiffs' allegations against Colonial fail to raise any valid cause of action under Count VII (the IDCSA) and Count XII (Conversion).  Accordingly, this Court should enter an order to dismiss these averred claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Defendant, Colonial, states that this Memorandum and its contemporaneously filed Motion have elected not to address Plaintiffs' Count I (breach of contract), Count II (RESPA), Count VI (TILA), or Counts VIII and IX (FCRA).

Counts X and XI were brought against fellow party-defendant Equifax Information Services, LLC.  On December 9, 2019, a Notice of Settlement between Jerry Stinson, Cindy Stinson, and Equifax Information Services, LLC was tendered to the Court.  [D.E. #13].

## BACKGROUND

On May 20, 2009, Plaintiffs entered into a mortgage loan with Colonial for the purchase of certain real property commonly described as 5646 Skipping Stone Drive, Indianapolis, Indiana 46237.  *See* Pl.'s Compl., ¶¶ 3–5, 232 & Ex. "X".  The loan is insured by the Federal Housing Administration.  *See id*. at ¶ 5.  After apparently encountering financial difficulty, on May 31, 2012, Jerry Stinson and Cindy Stinson filed for Chapter 13 bankruptcy protection in the United States Bankruptcy Court for the Southern  District of Indiana (Indianapolis Division), Case No. 12-06526-JJG-13 (the "Bankruptcy Case").  *Id*. at ¶ 39.   Therein, Jerry Stinson and Cindy Stinson proposed to make on-going, regular mortgage payments through the Chapter 13 Trustee's office and cure existing account arrearages—estimated to be in excess of $10,000.00. *Id*. at ¶¶ 42–43.  On September 17, 2012, Colonial filed its Proof of Claim (Claim #14) in Plaintiffs' bankruptcy case.  *Id*. at ¶¶ 44–45.  The amended Chapter 13 plan of Jerry Stinson and

2

Cindy Stinson was ultimately confirmed on January 2, 2013.  *Id*. at ¶ 46.

Several years later, in May 2017, the Office of the Chapter 13 Trustee filed a Notice of Final Cure Payment as part of Plaintiffs' bankruptcy case.  *See id*. at ¶ 48.  Colonial submitted its Response to Notice of Final Cure Payment on May 16, 2017, therein stating that Plaintiffs' prepetition default was paid; that Plaintiffs' mortgage loan account stood due for the June 1, 2017, contractual installment; and that a negative escrow balance of $121.05 existed as of May 2017.  *Id*. at ¶¶ 50–51.  Plaintiffs' bankruptcy case was subsequently discharged on June 15, 2017.  *Id*. at ¶ 53.

Sometime after their Chapter 13 bankruptcy closed, Jerry Stinson and Cindy Stinson retained counsel and began contacting Colonial to seek information about their mortgage account.  *See id*. at ¶¶ 108–112, 118–121, 136–137, 143–145, 151–153, 169–171, & 186–188. These communications are alleged to include three (3) requests for information under 12 C.F.R. § 1024.36—mailed between November 2018 and April 2019—as well as four (4) notices of error under 12 C.F.R. § 1024.35—mailed between April 2019 and August 2019.  *See id*.  Plaintiffs also assert they contacted Equifax Information Services, LLC to dispute their consumer credit reports.  *See id*. at ¶¶ 197–199, 202–204, Ex. "U", & 210.

Maintaining that there are irregularities afflicting their mortgage loan account and credit scores, Jerry Stinson and Cindy Stinson filed a Complaint and Demand for Jury Trial against Colonial Savings, F.A. and Equifax Information Services, LLC on October 3, 2019.  [D.E. #1]. Shortly thereafter, on October 23, 2019, Colonial appeared in this action by counsel.  [D.E. #6]. Contemporaneously, Colonial submitted its Notice of Automatic Initial Extension of Time to Respond to Complaint.  [D.E. #7].  Before this time to respond had expired, Colonial sought a second extension of time on November 22, 2019.  [D.E. # 10].  Being duly advised, this Court

authorized an extension through Thursday, December 26, 2019, as part of its Order entered on November 25, 2019.  [D.E. #11].  Defendant, Colonial, through its counsel, now submits the following for consideration.

## MOTION TO DISMISS STANDARD

Fed. R. Civ. P. 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id*. (citation omitted).  Accordingly, in order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id*.  (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. (citation omitted).  When analyzing a motion to dismiss, the court must consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (citations omitted).

Next, Fed. R. Civ. P. 12(b)(1) requires dismissal of claims over which the court lacks subject matter jurisdiction.  "In reviewing a Rule 12(b)(1) motion, [courts] may look beyond the complaint to other evidence submitted by the parties to determine whether subject matter jurisdiction exists." *Asufrin v. Roundpoint Mortgage Servicing Corp.*, 2016 WL 1056669, at *2 (N.D. Ill. Mar. 17, 2016) (citing *United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208,

1210 (7th Cir. 1996)).  "A plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met."  *Id*. (citing *Kontos v. U.S. Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987)).

## LEGAL ARGUMENTS

**A.      COUNTS III, IV, & V – The Alleged Bankruptcy Violations.**

Counts III, IV, and V should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because this Court does not have jurisdiction over each of these claims, which respectively allege that Colonial violated 11 U.S.C. § 524, 11 U.S.C. § 362(a), as well as Federal Rule of Bankruptcy Procedure 3002.1(g). *See* Pl.'s Compl., ¶¶ 249–266.  In accordance with 28 U.S.C. § 157(b): "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 . . ." 28 U.S.C. § 157(b). "The Seventh Circuit has explained that 'core proceedings are actions by or against the debtor that arise under the Bankruptcy Code in the strong sense that the Code itself is the source of the claimant's right or remedy, rather than just the procedural vehicle for the assertion of a right conferred by some other body of law[.]'" *Solis v. Wallis*, 2012 WL 3779065, at *10 (N.D. Ill. Aug. 30, 2012) (quoting *In re U.S. Brass Corp*., 110 F.3d 1261, 1268 (7th Cir. 1997)) (alteration in original). So, while district courts have original jurisdiction over civil proceedings arising under Title 11—per 28 U.S.C. § 1334(b)—district courts "may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). Local Rule 83-8 for the Southern District of Indiana does just that, stating: "Consistent with 28 U.S.C. § 157(a), all cases and proceedings arising under Title 11 of the United States Code, or relating to a case under Title 11 of the United States Code, are referred to the district's

bankruptcy court." S.D. Ind. L.R. 83-8; *see generally Cox v. Zale Delaware, Inc.*, 1998 WL 397841, at *3–*4 (N.D. Ill. July 13, 1998) (holding that automatic stay and discharge injunction violation claims should be brought in bankruptcy court when permitted by local rule, not the district court); *McFarland v. Bass & Associates, P.C.*, 1997 WL 711426, at *2 (N.D. Ill. Nov. 7, 1997) ("This district refers all such cases to the bankruptcy judges. *See* Local Gen. R. 2.33(A). The Bankruptcy judges may resolve all Title 11 cases and all core proceedings . . . . [T]he alleged violations of § 524's discharge provisions [] are core proceedings. . . . [T[he Count IV automatic stay claim is a core proceeding. . . . The claims . . . concern violations of orders entered by the respective bankruptcy judges. They are more appropriately resolved in the bankruptcy court.") (citations omitted).

Thus, here in the Seventh, only a bankruptcy court may adjudicate claims under 11 U.S.C. §§ 362 and 524. *Asufrin*, 2016 WL 1056669, at *7 (N.D. Ill. Mar. 17, 2016) ("In this circuit, the sole remedy for a violation of § 524 is a contempt action brought in the bankruptcy court that issued the order of discharge.") (citations omitted); *In re Benalcazar*, 283 B.R. 514, 522 (Bankr.N.D.Ill. Aug. 15, 2002) ("[I]t is generally accepted that only the bankruptcy court has authority to punish parties for violating the automatic stay. . . ."); *see generally Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958, 971 (11th Cir. 2012) (reasoning that "the court that issued the injunctive order alone possesses the power to enforce compliance with and punish contempt of that order.") (citation omitted). And so too must all avenues of recourse for supposed Bankruptcy Rule 3002.1(g) violations fall to the bankruptcy court. First, it must be understood that Rule 3002.1 is merely "a procedural mechanism designed to effectuate the Chapter 13 policy goal of providing debtors a 'fresh start.'" *In re Thongta*, 480 B.R. 317, 318 (Bankr.E.D.Wisc. Oct. 18, 2012) (citation omitted). Next, the very language of Bankruptcy Rule 3002.1(i) lists the

bankruptcy court as the sole source of remedies, holding:

> If the holder of a claim fails to provide any information as required by subdivision (b), (c), **or (g)** of this rule, **the court may**, after notice and hearing, take either or both of the following actions:
>
>> (1) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or
>> (2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

FED. R. BANK. P. 3002.1(i); *see In re Thongta*, 480 B.R. at 319 ("Subsections (g) and (h) of the Rule govern the claim holder's response to the trustee's notice of final cure payment, and subsection (i) contains the Rule's remedies for a creditor's failure to comply with the rule."); *see also In re Howard*, 563 B.R. 308, 314 (Bankr.N.D.Cal. June 1, 2016) ("Bankruptcy Rule 3002.1(i) provides the sanctions available if a secured creditor fails to file a proper response with the necessary information set forth in Rule 3002.1(g)."). Assuming *arguendo* some substantive rights arise under Rule 3002.1, they unarguably stem from bankruptcy law itself and qualify as core. *See generally In re Meyer*, 2018 WL 1663292, at *3 (Bankr.M.D.Penn. Apr. 4, 2018) ("A claim for sanctions under Rule 3002.1 is a core proceeding because it . . . would only arise in a bankruptcy case.") (citations omitted). Once more, this Court simply is not the proper forum to hear Plaintiffs' bankruptcy-centered disputes. Accordingly, because of a lack of jurisdiction over Counts III, IV, and V, each of these counts should be dismissed.

**B.      COUNT VII – Purported Violations of Indiana's Deceptive Consumer Sales Act.**

Plaintiffs' claim premised upon Indiana Code § 24-5-0.5, *et seq*., is merely their attempt to piggy-back alleged violations of other state and federal laws into Indiana's consumer sales statute.   However, Plaintiffs have overlooked the detailed enforcement mechanisms for this statute located in subsection four.   *See* IND. CODE § 24-5-0.5-4.   Vitally, "[f]or consumer

transactions in real property, only the attorney general may bring an action under the Act and he may seek relief only for incurable deceptive acts." *McKinney v. State*, 693 N.E.2d 65, 69 (Ind. 1998); *see also* IND. CODE § 24-5-0.5-4(a) ("This subsection does not apply to a consumer transaction in real property . . . except for purposes of time shares and camping club memberships."); IND. CODE § 24-5-0.5-4(b) ("This subsection does not apply to a consumer transaction in real property, except for purchases of time shares and camping club memberships."). The Plaintiffs' mortgage loan assuredly involves real property. As such, the Indiana Deceptive Consumer Sales Act provides Plaintiffs no source for relief. *See McKinney*, 693 N.E.2d at 70 (recognizing that "[a]t the time the General Assembly subjected real estate to the Act, it also added the provisions giving unique treatment to real estate transactions."); *see also Rainbow Realty Group, Inc. v. Carter*, 131 N.E.3d 168, 178 (Ind. 2019) (holding that Indiana's Deceptive Consumer Sales Act "does not contemplate an aggrieved person suing for damages when the alleged deception concerns real property. Subsection 4(a) of the Act, which authorizes a person who relies on a deceptive act to sue for damages, expressly 'does not apply to a consumer transaction in real property'" unless a time-share or camping-club membership is involved). Only the Indiana Attorney General may permissibly act on behalf of Jerry Stinson and Cindy Stinson. *See* IND. CODE § 24-5-0.5-4(c) ("The attorney general may bring an action to enjoin a deceptive act, including a deceptive act described in section 3(b)(20) of this chapter, notwithstanding subsections (a) and (b). However, the attorney general may seek to enjoin patterns of incurable deceptive acts with respect to consumer transactions in real property.").

But assuming, *arguendo*, Plaintiffs had standing under the statute, it still does them no good. Plaintiffs passingly allege their mortgage loan is a "consumer transaction;" that—however—is not the case. *See* Pl.'s Compl., ¶ 275. Pursuant to Indiana Code § 24-5-0.5-2(a)(1):

"Consumer transaction" means a sale, lease, assignment, award by chance, or other disposition of an item of personal property, real property, a service, or an intangible, except securities and policies or contracts of insurance issued by corporations authorized to transact an insurance business under the laws of the state of Indiana, with or without an extension of credit, to a person for purposes that are primarily personal, familial, charitable, agricultural, or household, or a solicitation to supply any of these things. However, the term includes the following:

(A) A transfer of structured settlement payment rights under IC 34-50-2.

(B) An unsolicited advertisement sent to a person by telephone facsimile machine offering a sale, lease, assignment, award by chance, or other disposition of an item of personal property, real property, a service, or an intangible.

(C) The collection of or attempt to collect a debt by a debt collector.

IND. CODE § 24-5-0.5-2(a)(1). A mortgage loan transaction is one where credit is extended and "an interest in real property that secures a creditor's right to repayment" is given. *McCullough v. CitiMortgage, Inc*., 70 N.E.3d 820, 8274 (Ind. 2017) (citing *Johnson v. Home State Bank*, 501 U.S. 78, 82 (1991)). Plaintiffs do not—and cannot—plausibly demonstrate a sale, lease, assignment, award by chance, or other transfer of a service or item from *Colonial* onto *them*. This seems to leave Indiana Code § 24-5-0.5-2(a)(C) as the only route to qualify Plaintiffs' mortgage loan as a "consumer transaction." Yet even that cannot work. Plaintiffs acknowledge their loan "was originated by Colonial National Mortgage, a division of Colonial Savings, NA." *See* Pl.'s Compl., ¶ 5. Crucially, the Fair Debt Collection Practices Act "excludes not only the original creditor [from the definition of a debt collector] but also any person who tries to collect a debt that 'was not in default at the time it was obtained by such person.'" *Carter v. AMC, LLC*, 645 F.3d 840, 843 (7th Cir. 2001) (quoting 15 U.S.C. § 1692a(6)(F)(iii)); *see also* IND. CODE § 24-5-0.5-2(a)(13) (assigning "Debt collector" the same meaning as set forth under 15 U.S.C. § 1692, but excluding Indiana attorneys from the label). Thus, without a vesting "consumer transaction," Plaintiffs' claim falters as a matter of law. Count VII must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

9

## C.    COUNT XII – Supposed Conversion.

Indiana Code § 35-43-4-3(a) provides: "A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion . . ." IND. CODE § 35-43-4-3(a). "A conviction of conversion is not a condition precedent to recovery in a civil action brought under the crime victim's relief act . . . but the claimant must prove all the elements of the criminal act.  In any criminal conversion action, criminal intent must be proven. It is this *mens rea* requirement that differentiates criminal conversion from the more innocent breach of contract or failure to pay a debt—situations the criminal conversion statute was not intended to cover." *Larson v. Karagan*, 979 N.E.2d 655, 661 (Ind. Ct. App. 2012) (citations omitted).  "[M]oney may be the subject on an action for conversion.  However, the money must be capable of being identified as a specific chattel.  It must be a determinate sum with which the defendant was entrusted to apply to a certain purpose." *Kopis v. Savage*, 498 N.E.2d 1266, 1270 (Ind. Ct. App. 1986) (citations omitted).   "[T]he failure to pay a debt does not constitute criminal conversion as a matter of law." *Old Nat. Bank v. Kelly*, 31 N.E.3d 522, 532 (Ind. Ct. App. 2015) (quoting *Tobin v. Ruman,* 819 N.E.2d 78, 89 (Ind.Ct.App.2004)).

Now, "[i]t is well settled that a mortgage agreement is a contract." *Huntington Mortgage Co. v. DeBrota*, 703 N.E.2d 160, 164 (Ind. Ct. App. 1998) (citation omitted).  And it has been held improper to attempt to repackage a breach of contract claim to "up the ante" by labeling it as criminal conversion.  *See Bayview Loan Servicing, LLC v. Golden Foods, Inc*., 59 N.E.3d 1056, 1068 (Ind. Ct. App. 2016) (quotation marks omitted) (citing *French-Tex Cleaners, Inc. v. Cafaro Co*., 893 N.E.2d 1156, 1167 (Ind. Ct. App. 2008)).  The reason being, of course, that "where the source of a party's duty to another arises from contract[,]" the principles of contract law should govern. *See id*. 1068–69 (citations omitted).

10

The gravamen of Plaintiffs' conversion action lies in how funds were (mis)applied pursuant to the terms and conditions of the mortgage loan. Specifically, Plaintiffs base their conversion claim upon the handling of two (2) unique sets of funds: the first in the amount of $406.64—arising from an alleged misapplication or misplacement in August 2012—and the second totaling to $193.25—stemming from money possibly directed towards late charges. *See* Pl.'s Compl., ¶¶ 62–64, 83, 295. This, alone, warrants dismissal of the conversion count, as Indiana's "legislature did not intend to criminalize bona fide contract disputes." *NationsCredit Commercial Corp. v. Grauel Enterprises, Inc*., 703 N.E.2d 1072, 1079 (Ind. Ct. App. 1998).

Further, the money mentioned *supra* must have originated from Plaintiffs' standard tendered mortgage payment, since Plaintiffs do not allege some type of unique, tailored destination for the sums of $406.64 and $193.25. *See generally* Pl.'s Compl., ¶¶ 56–84. This, too, is quite problematic for Plaintiffs' conversion action. As a matter of law, for the aforesaid funds to be converted, they must have been "segregated as separate chattel." *Grant v. Van Natta*, 2013 WL 466212, at *11 (S.D. Ind. Feb. 7, 2013). Yet Plaintiffs do not allege such a scenario; instead, Plaintiffs choose to argue about the propriety of the fees allegedly imposed and how this money was purportedly (mis)handled. *See* Pl.'s Compl., ¶¶ 56–84. Consequently, even if Plaintiffs are correct—*i.e.*, that they are owed $599.89 by Colonial—failing to plead that *it is the specific* $406.64 (August 2012) and *the specific* $193.25 (April 2018) that must be returned dooms Count XII. *See Kopis*, 498 N.E.2d at 1270 (determining that although Defendant-Kopis was legally obliged to repay $40,000.00 to Plaintiff-Savage upon the failure of their real estate deal, no cause of action existed for conversion because nothing suggested Kopis had to return "*the specific* $40,000 which Savage had given him."); *see also Newland Res., LLC v. Branham Corp.*, 918 N.E.2d 763, 776 (Ind. Ct. App. 2009) (affirming trial court's dismissal of a

11

conversion claim because it "did not identify the money at issue as a special chattel.").  To reiterate, failing to pay a debt "does not constitute criminal conversion as a matter of law." *Tobin*, 819 N.E.2d at 89.

There is an additional threshold matter which must be addressed:  is a mortgage payment "property of" a borrower as necessitated by Indiana Code § 35-43-4-3(a)?  *See* IND. CODE § 35-43-4-3(a).  As a matter of law, the answer is no.  Plaintiffs concede Colonial is due payments under the subject mortgage loan.  *See generally* Pl.'s Compl., ¶¶ 43, 55, 81, 83, 100, & 107.  And when this is the case, "a mortgagor does not have a right to possess payments made under the loan—even if, as alleged by Plaintiff, they were misapplied by Defendants for an improper use." *Bennett v. One West Bank*, 2011 WL 2493699, at *7 (S.D. Cal. June 23, 2011); *see Kopis*, 498 N.E.2d at 1271 (finding that Plaintiff-Savage "surrendered all possessory and ownership rights in the $40,000 when his bank paid the money to Kopis.").  Due to this relinquishment, there was no "property of another person" remaining for Colonial to convert.  *See* IND. CODE § 35-43-4-3(a). Plaintiffs' conversion claim falls short for this reason too.

In closing, as summarized by the court in *Kentuckiana Healthcare v. Fourth Street Solutions, LLC*:

> Money is a peculiar sort of property because it is almost always completely fungible.  When one pays money to a merchant and then receives a refund of that money, it is not the same physical bills that are returned but simply an equivalent amount of cash.  For that reason, special legal rules apply when one seeks the return of money under a theory of conversion.

2007 WL 968754, at *4 (S.D. Ind. Mar. 22, 2007).  Plaintiffs' have neglected to set forth allegations which meet the heightened standards inextricably intertwined with a conversion claim premised upon the payment of money.  Due to this, Count XII must also be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for its failure to state a claim.

## CONCLUSION

WHEREFORE, the Defendant, Colonial Savings, F.A., respectfully requests that this Honorable Court enter an Order dismissing Counts III, IV, V, VII, and XII of Plaintiff's Complaint and granting such further and additional relief as is deemed to be just and appropriate in the premises.

Respectfully submitted,

/s/Kurt V. Laker
   Kurt V. Laker (#24991-49)

## CERTIFICATE OF SERVICE

This is to certify that I have served a copy of the foregoing upon all counsel of record via the Court's electronic distribution system this 26th day of December, 2019:

Quentin J. Collins
320 N. Meridian St., Ste. 1100
Indianapolis, IN 46204
qcollins@clarkquinnlaw.com

Travis W. Cohron
320 N. Meridian St., Ste. 1100
Indianapolis, IN 46204
tcohron@clarkquinnlaw.com

/s/Kurt V. Laker
   Kurt V. Laker (#24991-49)

DOYLE & FOUTTY, P.C.
41 E. Washington St., Ste. 400
Indianapolis, Indiana  46204
Telephone:     (317) 264-5000
Facsimile:     (317) 264-5400
klaker@doylefoutty.com